| 111 | 473 |
| 117 | 183 |
|---|---|
| 111 | 473 |
| 137 | 216 |

</div>

[L. A. No. 76.    Department One.—March 10, 1689.]

JOHN J. CHARNOCK ET AL., APPELLANTS, v. FRAN-
CISCO HIGUERRA ET AL., RESPONDENTS.

RIPARIAN RIGHTS—IRRIGATION—USE OF PUMPS.—A riparian owner has the
right to divert a reasonable quantity of the water of the stream for the
purpose of irrigation, and it is immaterial whether the same is diverted
by means of ditches or is raised upon the land by the use of pumps.

ID.—METHOD OF OBTAINING WATER IMMATERIAL.—The mere method of ob-
taining the water with which to irrigate has nothing to do with the pro-
cess of irrigation, or with the meaning of the word; and the reasonableness
or lawfulness of any given diversion of water is in nowise affected by
the mere mode of diversion, so long as the rights of others are not in-
fringed.

ID.—BASIS OF RIGHT TO IRRIGATE—EXTENT OF RIGHT—ALTITUDE OF LAND
IMMATERIAL.—The right of riparian proprietors to use water for the
purpose of irrigation is based upon the need of water upon the land;
and assuming the need to exist equally as to all riparian land, the respec-
tive rights of the proprietors to divert water for this purpose must be
in proportion to their respective ownerships upon the stream; and in no
case can one riparian proprietor be deprived of his just proportion of
water merely because his land by reason of its altitude or level above
the stream cannot be irrigated by the force of gravity, or by the same
method employed on some other land.

ID.—FINAL DETERMINATION OF RIGHTS—NECESSARY PARTIES.—A final and
satisfactory adjustment of the respective rights of irrigation of riparian
owners cannot be had without the presence of every person having any
right in the stream, and all the facts which can possibly bear upon the
question should be laid before the court.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial.   LUCIEN SHAW, Judge.

The facts are stated in the opinion of the court

*F. H. Howard*, for Appellants.

The prime riparian right to use water from the stream for irrigation, is to divert the flow of the stream and cause it to flow by natural gravitation upon riparian lands so lying as to be susceptible of receiving said flow.   (Code Napoleon, art. 640; Boileux Commentaire sur Le Code Civil, reviewed by Poncelet, ed. of Bastiné, Brussels, 1838; Gould on Waters, sec. 91, and authorities cited in note 2, sec. 148; Pomeroy on Riparian Rights, secs. 123, 125, 129, 132, 134, 136, 139; *Anderson* v. *Cincinnati etc. Ry.*, 86 Ky. 44; 9 Am. St. Rep. 266; *Fleming* v. *Davis*, 37 Tex. 173; *Thurber* v. *Martin*, 2 Gray, 394; 61 Am. Dec. 468; Acts of Congress of July 26, 1866, and March 3, 1891; Civ. Code, secs. 1412, 1415; Wright Act; *Union etc. Co.* v. *Ferris*, 2 Saw. 198; *Parker* v. *Griswold*, 17 Conn. 299, 300; 42 Am. Dec. 739; *Stockport etc. Co.* v. *Potter*, 3 Hurl. & C. 326, quoted in note to Angell on Watercourses, 7th ed., 105.)

*R. Dunnigan*, for Respondents.

What is a reasonable use must be decided upon the facts of each particular case.   (Pomeroy on Riparian Rights, sec. 133; *Harris* v. *Harrison*, 93 Cal. 680.)   Respondents are entitled to make a reasonable use of the water for the purpose of irrigating their riparian land.   (*Heilbron* v. *Land etc. Co.*, 80 Cal. 193; *Lux* v. *Haggin*, 69 Cal. 394; *Gould* v. *Stafford*, 91 Cal. 152; *Alta Land etc. Co.* v. *Hancock*, 85 Cal. 226; 20 Am. St. Rep. 217; 7 Pa. St. 363–68.)

VAN FLEET, J.—This is an action brought by several riparian proprietors against certain persons above them on the stream, to restrain them from diverting any of the waters of the stream.

The complaint alleges that the plaintiffs are riparian proprietors, and as such entitled to all the waters of the stream; that the defendants are not entitled to use any of the water for any purpose; and that they, by means of certain machinery, artificially and wrongfully raise and divert from the stream a large amount of the waters thereof, for the purpose of irrigating certain lands not of right irrigable from the stream, and which do not so lie as to be irrigated by the waters of said stream "diverted therefrom by any natural means" on said lands.

The facts found by the court are in substance: That both plaintiffs and defendants are riparian proprietors on the stream, the lands of defendants being above those of plaintiffs; and that neither plaintiffs nor defendants have any right to the waters of the stream, except as such riparian owners. That all of the lands of the plaintiffs, and thirty acres of the lands of the defendants, are so situated that the water of the stream can be diverted and conducted thereon solely by natural gravity from dams in the stream, situated within the limits of said lands, respectively, without backing the water upon the lands of the owners next above them; and that no other part of the lands of the defendants can be irrigated in that manner. That the defendants have erected pumping machinery and pumps on their land, and by means thereof pump water from the stream on to land belonging to them, bordering on the stream and within its watershed, but which lie too high to be irrigated solely by natural gravity from dams situated within the limits of their lands without backing the water upon the lands of others above them. That all of the lands of both parties are dry and of little value without irrigation, but are of great value and very productive when irrigated. That defendants have not used, and do not threaten or propose to use, more than their just proportion of the water of the stream.

On these findings judgment was entered in favor of

defendants, with leave to any of the parties at any time to " maintain another action to determine the exact proportion of the water of said creek which the respective owners may use."

A portion of these findings is attacked as unsupported by the evidence; but we think that the evidence fully justifies them in the particular in which they are so attacked. The only question, then, is whether the findings support the judgment.

1. It is contended by appellants that a riparian proprietor has not, for the purpose of irrigation, the right to raise water by means of pumps. No authorities are cited in support of this contention, and counsel states his inability to find any. So far as we can understand, this argument is based on the meaning of the word " irrigate," which counsel contends is " to convey water *by ditches*," and on the alleged universal custom in the past to employ only such means in irrigation.

As to the meaning of the word " irrigation," counsel cites some doubtful passages from civil law writers; but it is evident that this court, in holding, as it has repeatedly held, that riparian proprietors have the right to use a reasonable proportion of the water of the stream to irrigate their lands, used the term in no such restricted sense. The Latin word from which it is derived means, primarily, to convey water to or upon anything, and, more generally, to wet or moisten anything; and the ordinary definition in our language is to water lands, whether by channels, by flooding, or simply by sprinkling. The mere method of obtaining the water with which to irrigate has nothing to do with the process of irrigation or the meaning of the word.

There was no proof in this case of any such custom as is claimed by appellants; and, if we can take judicial notice of such a matter at all, we are unable to say that pumping has never been used for such purpose. It may be that, owing to the comparatively greater expense of that method, it has been little used in the past; but, if improvements in machinery have made, or shall make,

that method practicable, we see no reason why riparian proprietors may not like others take advantage of such improvements. In fact it has always been considered that the reasonableness or lawfulness of any given diversion of water is in nowise affected by the mere *mode* of diversion. Thus in *Elliot* v. *Fitchburg Ry. Co.*, 10 Cush. 191; 57 Am. Dec. 85 (cited with approval in *Lux* v. *Haggin*, 69 Cal. 402, 404), Chief Justice Shaw said: "One man may take water from a perennial stream of moderate size, by means of buckets or a pump—*for the mode is not material*—to water his garden." And in such a case he says, "the water would be for irrigation," and such "might be regarded as a reasonable use."

So this court has repeatedly held that a prior appropriator of water may change, at pleasure, the place or mode of his diversion, so long as others are not injured by such change.

And in *Earl of Norbury* v. *Kitchin*, 7 L. T., N. S., 685, it was held that a riparian proprietor, so long as he took no more than his reasonable share of the water, might take water from the stream by pumping machinery, elevate it into a reservoir, and thence convey it by pipes to other land, not riparian, and there use it; the court holding that neither the mode of diversion nor the use to which the water was actually applied was material—the only question being whether or not the defendant had taken more than his reasonable share.

2. But appellants claim, as we understand them, that whether the particular mode is material or not, the mode by which the land of a riparian proprietor can possibly be irrigated is a material factor in ascertaining what portion of the water he may divert for irrigation. They contend that a riparian proprietor cannot be allowed to use any portion of the water of the stream to irrigate land which, though bordering on the stream, lies so far above it that water cannot be conducted thereon solely by natural gravitation from the stream, without the use of any appliances other than ditches originally on such land and dams situated thereon, and

which will not back the water on the lands of other persons. In other words, the reasonable proportion of water which any riparian proprietor may withdraw for irrigation is made to depend, primarily, upon the area of his land which can be irrigated in that particular manner.

In the first place, that question does not properly arise in this case. The complaint was framed on the theory that the defendants were not riparian proprietors at all and had no right to divert any water. No issue was tendered as to what amount or proportion of the water of the stream could lawfully be used by the defendants, if they had the right to use any portion. It was denied that they had any rights to the stream; and the complaint furnished no data from which any rights of the parties, as tenants in common of the water, could be determined. Nevertheless, as the question seems to have been treated as an issue, evidence being introduced on the subject, apparently without objection, and as the court below did to a certain extent consider it, it calls for consideration at our hands.

No authorities whatever are cited by appellants in support of this contention, nor can we find that any such doctrine has ever been even suggested by any court or writer. Appellants do cite some cases to the point that riparian diversion must be " on the bank of the proprietor," but the judgments in those cases do not sustain that doctrine, and we are not prepared to say that any such rule exists. It, is, however, not necessary to decide that question, for its determination would shed no light on the subject now under consideration. The only question now is whether the mere altitude of this land can deprive the riparian owner of the right to irrigate it.

No rules have ever been laid down by this court for determining the relative and proportional rights of riparian proprietors to the use of water for irrigation, nor has any case come before us, in which we could properly determine what are the rules on that subject.

But whatever difficulties may arise in matters of detail, that problem must find its solution in an application of the principles upon which the right to use water for that purpose at all is based. That right, as recognized in the decisions of this court, is founded upon the proposition that in an arid country the use of water for irrigation is of such vital consequence, that of necessity it must be considered as embraced within the spirit of the category of rights accorded by the common law to riparian proprietors. The common-law rule, as interpreted in this country, is that the right to the waters of the stream, with certain exceptions not material here, belongs to the riparian proprietors in common and equally, and may be exercised by each as the necessities of the situation may require only so as not to infringe upon the equal rights of the others. As irrigation is here a necessity of the situation, resulting from climatic conditions, the right to use a just and equal portion of the water for that purpose has been held to be an essential part of the riparian ownership.

Such being the foundation of the right, it is evident that the restriction contended for by appellants is inconsistent with the rule itself. The right to use the water for this purpose results from the need of water upon the land. Assuming this need in any given case to exist equally as to all the riparian land, the respective rights of the proprietors to divert water for this purpose must be in proportion to their respective ownerships upon the stream. No other method would conform to the rule of equity. If every riparian proprietor on a given stream owned the same quantity of land, with the same frontage on the stream and the same susceptibility to and need of irrigation, each would be entitled to precisely the same quantity of water for that purpose. We do not now decide how far a variation in any one of those factors would affect the question, nor whether all of them are necessarily to be considered in any case. But it must necessarily be true, from the very nature of the right, that in no case can one pro-

prietor be deprived of this just and equal proportion merely because his land, by reason of its level or altitude above the stream, cannot be irrigated by the same method employed on some other land.

That the rule contended for by appellants would be utterly inconsistent with the very foundations of the riparian doctrine in this country will readily be seen by observing its results in particular instances. According to appellants' theory, none of the waters of the Colorado river, in the greater part of its course, can ever be used by the riparian owners for irrigation, for none of them can erect a dam high enough to divert any water by gravity on his own land without backing the water upon his neighbor. The same is true of many important streams in the mountainous districts of this state, now extensively used for irrigation. Yet nowhere is irrigation more needed than in such localities. Coming next to the level plains, we find streams with so little fall that diversion by a dam on the very tract of land to be irrigated, is only possible on tracts having very considerable frontage on the stream. Suppose six adjoining proprietors on such a stream, neither of whom can divert the water on his own land in the manner required by appellants. According to appellant's contention they could not, even by agreement among themselves, divert the water on the land of one and carry it to the land of another of their number, or pump it onto the land of any of them. They must permit all the water to flow down to the more fortunate proprietor below, whose acres are thousands to their hundreds. And yet, if one of the six should buy the lands of the others, he would then be entitled to divert the water.

Such are some of the consequences, suggesting themselves to the mind, of the rule we are asked to declare; and they show clearly that the *mode* of diversion of the water is a false quantity in the discussion. Whatever be the just proportion of water to which any riparian proprietor is entitled, that proportion cannot be diminished by the fact that in order to utilize it he must

raise it from the bed of the stream by pumps, or other similar appliances.    Every diversion of water from a stream is artificial—a disturbance of the natural order of things.    A dam or a ditch is as much an artificial mechanism as a pump, it may indeed be much more so; and the one alters the natural conditions in the same sense that the other does.    The right to take the water at all is a right to change the ordinary course of nature; and the methods employed, so long as their use does not infringe the like and equal rights of others, are immaterial.

We do not wish to be understood as now deciding how, in any given case, the respective proportions of the different owners upon a stream are to be determined. Whether they are to be ascertained according to the extent of ownership or frontage along the stream, or according to the area of land bordering on the stream, or the amount of land needing or susceptible of irrigation, or the character of the soil, or according to several or all of these circumstances or other circumstances that may exist, has never been decided, nor has there been, so far as we know, any opportunity for deciding it.    We merely hold that the mere mode of diverting the water from the stream, so long as that mode does not deprive others of their equal rights, is not a factor to be considered.    We will add, in view of any further effort that the parties may make to obtain a judicial determination of their respective rights in this stream, that a final and satisfactory adjustment can never be had without the presence of every person having any right in the stream, and that all the facts which can possibly bear on the question should be laid before the court.

In the present case, as we have suggested, no sufficient data are furnished by the pleadings or evidence for a determination of that question; and the learned judge of the court below would have been justified in no other disposition of the case as presented than the one made.

The judgment and order are, therefore, affirmed.

HARRISON, J., and GAROUTTE, J., concurred.

Hearing in Bank denied.