[L. A. No. 210.    Department Two.—May 27, 1897.]

## SAN LUIS WATER COMPANY, RESPONDENT, v. ALBERTO ESTRADA ET AL., APPELLANTS.

PLEADING—WAIVER OF OBJECTIONS TO DENIALS OF ANSWER—APPEAL.—Where the plaintiff has gone to trial on the merits, without objection to the denials of the answer, or to any evidence offered under them, he will be held to have waived all objection to the sufficiency of the denials, and cannot urge their insufficiency on appeal for the first time.

WATER RIGHTS—FRANCHISE TO SUPPLY TOWN WITH WATER—VALIDITY OF ASSIGNMENT TO CORPORATION — CONSTITUTIONAL LAW —SPECIAL LEGISLATION.—Where a franchise was granted by the legislature by special act, to certain individuals and their assigns, to supply the inhabitants of a town with pure water, without any provision that they shall incorporate, the grantees may thereafter make a valid assignment of the franchise to a corporation subsequently organized under the general laws of the state for the purpose of supplying the same town and its inhabitants with pure water, and the purchase of such franchise is within the powers of such corporation, and contributes necessarily and directly to its objects and purposes, nor can the validity of such assignment be assailed upon the ground that the power to supply a city with water cannot be conferred directly or indirectly upon a corporation by special act under the constitution, where no connection can be traced between the corporation and the passage of the special act, and it does not appear that the act was obtained for the purpose of evading the constitutional inhibition.

ID.—CONSTRUCTION OF DAM—ADMISSION OF ANSWER—SUPPORT OF FINDING.—Where the answer fails to deny the allegation for the complaint that plaintiff constructed a dam across the bed of the creek in controversy, at a specified date, the admission of the answer is sufficient to

support a finding of the fact alleged, without direct evidence of that fact.

ID.—EXTENT OF APPROPRIATION — CAPACITY OF FLUME — USER — SUFFICIENCY OF EVIDENCE.—Where the evidence for the plaintiff shows an appropriation of the waters of the creek by means of a dam and flume, and that the flume had the capacity alleged in the complaint, and that the water company used what its flume would carry, and that it could carry all the waters of the creek in the summer time, findings that it had appropriated the waters of the creek to the extent of the alleged capacity of the flume, are supported by the evidence.

ID.—SUPPLY OF TOWN—GROWING NECESSITIES—SUPERIORITY OF RIGHTS —ACTION OF WATER COMPANY—EVIDENCE.—The growing necessities of a town supplied with water by a water company, cannot give the corporation the right to more water than it had first appropriated, superior to the rights that other appropriators may meanwhile have acquired; but evidence as to how much water was required to supply the town may be admissible to show that the water company was keeping within its powers and objects, and not taking water in excess of its needs.

ID.—JUDICIAL NOTICE — AMOUNT OF WATER SUPPLY —PROPORTION TO POPULATION — QUESTION OF FACT.— The court cannot take judicial notice that less population at a former time used less water than a greater population at a later time, but the question is one of fact, to be determined by proof.

ID.—IRRIGATION—EXTENT OF WATER RIGHT—RELATIVE RIGHTS OF PARTIES—SUPPORT OF FINDINGS—CONFLICTING EVIDENCE.—Where the evidence is conflicting and confused as to the extent of a water right used by a defendant for irrigation, and as to the relative rights of the plaintiffs and such defendants upon the question of priority, the findings of the court as to these matters must stand.

ID.—RIPARIAN RIGHTS—APPROPRIATION—PLEADING.—Where the pleadings base the relative rights of the parties upon the appropriation of water, and no riparian rights are pleaded, no issue is involved as to riparian rights, and the question as to the extent of such rights does not arise in the case.

ID.—RIGHTS OF PLAINTIFF—PRIOR APPROPRIATION—ADVERSE USER—APPEAL—REVIEW OF FINDINGS AND EVIDENCE. — Where the pleadings allege both appropriation and adverse user, and the court finds for plaintiffs, upon the issues of adverse user and appropriation, and the evidence tends to establish the rights of plaintiff by prior appropriation, subject to certain prior rights of some of the defendants, it is not reversible error, if the finding as to adverse use is not supported by the evidence.

ID.—RIGHT TO CHANGE OF PLACE OF USE — IMPROPER FINDINGS AND JUDGMENT.—The owner of a water right has the right to change the place of use, where such change would not injure the appropriator; and the court is not authorized by its findings and judgment to limit the place of use by a prior appropriator, where there is no evidence to show that injury would result from selecting some other place of use.

ID.—APPEAL—SPECIFICATIONS OF INSUFFICIENCY OF EVIDENCE—ABSENCE OF EVIDENCE.—Where there is an entire absence of evidence to sustain

a finding, it is not necessary to specify the particulars in which the evidence is insufficient to justify it, but, under a general assignment of insufficiency of the evidence to justify it, the burden should be on the party sustaining the findings to call attention to enough evidence to justify it.

ID.—LIMITATION OF PRIOR RIGHT—IRRIGATION.—Where water was first appropriated for mill power, for domestic use and for stock, the use of a small quantity, not specified, for watering a small garden patch may be properly ignored in subordinating the right of irrigation generally to the rights of a subsequent appropriator.

ID. — EVIDENCE — LEASE ASSIGNED TO PLAINTIFF — ADMISSION. — Where plaintiff accepted an assignment of a lease of the lands upon which a defendant was using a water right, such lease is admissible in evidence, as tending to show that plaintiff did not own such water right, and as tending to admit the defendant's right thereto.

APPEAL from a judgment of the Superior Court of San Luis Obispo County, and from an order denying a new trial. V. A. GREGG, Judge.

The facts are stated in the opinion.

*Venable & Goodchild*, and *W. H. Spencer*, for Appellants.

The power to supply a city with water cannot be conferred directly or indirectly upon a private corporation by a special act. (*San Francisco v. Spring Valley Water Works*, 48 Cal. 494.) Plaintiff never had the uninterrupted use of any of the water of the creek, except only of such as had passed the defendants' lands, and, as to this, plaintiff could not acquire any right against defendants by its use thereof. (*Hargrave v. Cook*, 108 Cal. 72; *Hanson v. McCue*, 42 Cal. 303; 10 Am. Rep. 299; *Lakeside Ditch Co. v. Crane*, 80 Cal. 181.) The appropriation by plaintiff was not by the statutory mode provided in the Civil Code, section 1415, and therefore is confined to what was actually taken by it in 1876 (*Kelly v. Natoma Water Co.*, 6 Cal. 105), and could not be extended by plaintiff after defendants' rights had intervened. (*Nevada Water Co. v. Powell*, 34 Cal. 118; 91 Am. Dec. 685; *DeNecochea v. Curtis*, 80 Cal. 397.) The use to which plaintiff put the water did not of itself give plaintiff any right to the water superior to defend-

ants', nor did the growing necessities of the town give it right to more water, for it had the privilege of eminent domain. (*St. Helena Water Co.* v. *Forbes*, 62 Cal. 183; 45 Am. Rep. 659.)

*Graves & Graves*, for Respondent.

Plaintiff is the proper assignee of the grantees of the franchise, and does not take by special act. (*People* v. *Stanford*, 77 Cal. 371.) The riparian rights of the defendants, not having been pleaded, are not involved in the action. (*Riverside Water Co.* v. *Gage*, 89 Cal. 410; 108 Cal. 240.) If there is any evidence in this case showing any interference with plaintiff's right to the waters of the creek by the defendants prior to 1894, it is so slight that those who performed the acts of interruption may be regarded simply as trespassers, and their intrusions not long enough or sufficient to show a break in the continuity of plaintiff's use of the same. (*Lakeside Ditch Co.* v. *Crane*, 80 Cal. 184.) The evidence cannot be reviewed, because the transcript does not specify the particulars in which it is claimed that it is insufficient to sustain the decision. (*Thorne* v. *Hammond*, 46 Cal. 531.)

CHIPMAN, C.—This is an action to quiet the title of plaintiff to the waters of San Luis Obispo creek, and to restrain the defendants from diverting said waters.

The complaint alleges that plaintiff became a corporation June 4, 1895, whose object it was to furnish the town, now the city, of San Luis Obispo, in the county of that name, and the inhabitants thereof, with pure, fresh water, and is now so engaged. That plaintiff became the owner about the date named, by assignment and through mesne conveyances, of a certain franchise, granted by the legislature of California to M. A. Benrimo and others by an act entitled "An act to provide for the introduction of good and pure water into the town of San Luis Obispo," approved March 28, 1872; that the grantees of said franchise, and plaintiff and its

predecessors in the ownership of said franchise, have in all things complied with the terms and conditions thereof; that, to carry out the purposes of the corporation, it erected a dam across the bed of San Luis Obispo creek about October 25, 1875, and appropriated and diverted through a dam, pipes, and flume all the waters of said creek, and ever since said date has continuously and adversely to defendants, and under claim of right, diverted all said waters, and ever since said date has been, and now is, the owner of all the waters of said creek.

That about June 25, 1894, certain of the defendants built dams across said creek in its natural bed above plaintiff's point of diversion, and by means thereof diverted said waters through flumes and ditches on the lands owned by certain of said defendants, and are now using said waters, and obstructing their flow, and are preventing plaintiff from diverting and using all of said waters; that said defendants threaten to keep said dams across said creek, and obstruct the flow of water, etc. The complaint was verified.

Jones and Moreland, two of the defendants, by their attorneys, filed a demurrer to the complaint, which was overruled, and they filed a separate answer. No point is made on the demurrer. To the answer of Jones and Moreland respondent objects that it is not sufficient, and that judgment should be affirmed as to them. But plaintiff went to trial on the merits without objection to the answer, or any evidence offered under it; and will not be allowed to raise the point for the first time in this court, that certain allegations of the complaint are not specifically denied; it will be held to have waived all objection by failure to except at the proper time. (*McCullough* v. *Clark*, 41 Cal. 298.)

The court found the allegations of the complaint to be true, with certain modifications. It found that one Joaquin Estrada, predecessor of some of the defendants, for more than twenty-two years prior to 1893, was in the quiet possession of certain lands lying on said creek

immediately above the point of plaintiff's diversion; that at all the times said Estrada had been in possession he used of the waters of said creek for ordinary domestic purposes and for watering stock, and said uses continued to the present time; that about 1870 said Estrada built a dam across said creek near his house on said land, and appropriated by a ditch on each side of the creek waters sufficient for all seasons when required, to irrigate and raise crops upon seven acres of said land on the east side of said creek below his said dam, and said water has been used adversely to plaintiff and the whole world (except said Jones and Moreland), to this time; that since 1875 the said Estrada and those claiming under him have appropriated and used sufficient water to irrigate about thirty-five acres of land for purposes of cultivation, but subordinate to and after plaintiff had taken five hundred thousand gallons per day of said water.

That one Sandy Sumner in 1870 was seised in fee of certain land on said creek next above that of said Estrada; that said Sumner in 1870 erected a dam across said creek and upon his said land, and diverted waters of said creek by ditch on the easterly side, and used the said waters to run a mill, for domestic uses at his house, and for watering stock on said land, and after said use returned the water to the creek channel, and so used said water adversely to plaintiff to February 20, 1882, when, being seised of the lands, he conveyed them to defendant Jones; that Jones continued to use the said waters as had been done by said Sumner; that for six years last past defendant Moreland has been a tenant of said Jones, and has made like use of said waters, and also to irrigate about five acres of land, but the irrigation of said five acres was after plaintiff had taken its said daily supply of five hundred thousand gallons.

As to the claim of Maria Y. Harris, a defendant, and those claiming under her, the court found that an adverse use to plaintiff and the whole world had been proved to water as diverted through a ditch, on a grade

of two and three-fourths inches fall in its first section of ten feet, said stream so diverted being sixteen inches wide and one and a half inches deep, and appropriating fifty thousand gallons of water every twenty-four hours at the point of diversion, and no more. From these facts thus found the court concludes:

That the plaintiff is entitled to the possession and use of five hundred thousand gallons per day of said water, and is entitled to divert said water at the point of diversion.

That those claiming under Joaquin Estrada are entitled, except as against defendants Jones and Moreland, to divert and use by means of their dam sufficient of said waters to irrigate on the east side of said creek as much as can be irrigated by water taken by said dam and ditch constructed by said Estrada.

That said Jones and Moreland are entitled, for domestic purposes at their house and for watering stock upon their said land, to divert through their present ditch water for said uses and to carry the same on the easterly side of said creek to a place on said creek where the said Sumner mill formerly stood—the right to use said water for irrigation to be after plaintiff has taken out its five hundred thousand gallons per day and subordinate to the rights of plaintiff.

That said Maria Y. Harris was seised in fee June 3, 1891, of the lands mentioned in the answer of one of the defendants; that the allegations therein as to certain springs are true; that for more than eight years prior to June 30, 1891, she and those claiming under her had appropriated through flumes and ditches water from said springs and used the same for watering stock and for irrigation adversely to the whole world, and said appropriation amounted to fifty thousand gallons of water per day.

The court grants the injunction prayed, except as to the rights specially found to be in certain defendants and already noted, and the title of plaintiff is quieted to five hundred thousand gallons per day.

The appeal is from the judgment and from the order overruling the motion for a new trial.

First. The first point made by appellants in the assignments of error, is that the trial court erred in admitting in evidence the franchise pleaded in the complaint, and its transfer to plaintiff, and in finding that plaintiff is the owner of said franchise.

The precise point made is, that the power to supply a city with water cannot be conferred directly or indirectly upon a private corporation by special act.

By act of the legislature entitled, " An act to provide for the introduction of good and pure water into the town of San Luis Obispo," approved March 28, 1872, a certain franchise was granted to M. A. Benrimo, C. W. Dana, and W. W. Hays.

Section 1 grants to these persons and their assigns the exclusive right for twenty-five years to supply the inhabitants of the town of San Luis Obispo with water. Succeeding sections prescribe certain duties to be performed by the grantees and confer certain rights. By section 7 the town is authorized "to purchase all the works and franchises" granted after fifteen years. No other authority to sell is given in terms.

The plaintiff is a corporation duly organized under the laws of this state June 4, 1875, and alleges that it became the owner through mesne conveyances of said franchise about the same date last mentioned. Appellants rely upon *San Francisco* v. *Spring Valley Water Works*, 48 Cal. 493.

By an act entitled "An act to authorize Geo. H. Ensign and others, owners of the Spring Valley Water Works, to lay down waterpipes in the public streets of the city and county of San Francisco," approved April 23, 1858, the legislature of this state granted to said Ensign and his associates certain rights to lay down waterpipes in the streets of San Francisco, prescribing certain details of conditions not necessary to be stated. Section 8 provided: " This act shall not take effect unless the parties named in section 1 shall within sixty

days after its passage duly organize themselves in conformity with the existing laws regulating corporations now in force in this state."

The said Ensign and his associates formed a corporation soon after under the name of "The Spring Valley Water Works," and introduced water into the city. The act of April 23, 1858, was amended subsequently, and certain other legislation occurred with reference to the company, but it is not involved in the question now presented.

When this act was passed, section 31, article IV, of the constitution provided that "corporations may be formed under general laws, and shall not be created by special act, except for municipal purposes."

It was contended in the case that arose *supra* that this was an attempt to confer corporate rights by a special act upon Ensign and his associates in violation of this article of the constitution. It was held by the court that: "An act which grants to individuals and their assigns certain powers and privileges, and then provides that the act shall not take effect unless the persons to whom the grant is made shall, within a certain time, organize themselves into a corporation under existing laws, is a grant, not to the individuals as persons, but to the corporation when formed," and the act was held to be unconstitutional in this respect.

In the case now before us, quite a different state of facts exists. The act conferring the franchise or rights upon Benrimo and his associates had no such condition as that in the act of 1858 requiring them to form a corporation. When the act here in question was passed, the corporation had no existence in fact, or, so far as we know, in expectancy, and it was not formed until three years later, and it does not appear that any of the original grantees of the franchise had any interest in the corporation, or that they caused it to be formed.

It seems to me that the only question presented, therefore, is whether the corporation duly formed to supply the town (now city) of San Luis Obispo and the

inhabitants thereof with water could, under any circumstances, purchase and become the owner of this franchise.

Appellants do not attack the validity of the franchise to Benrimo and associates, but they say that the assignment of the franchise to the corporation was illegal and void, and the corporation could not hold or exercise it.

The plaintiff corporation to which the transfer was made was formed for the purpose and object of furnishing the town of San Luis Obispo and the inhabitants thereof with pure fresh water, and has been so engaged since its organization.  Section 283 of the Civil Code declares: "A corporation is a creature of the law, having certain powers and duties of a natural person."  In the *Dartmouth College case,* 4 Wheat. 636, Chief Justice Marshall said: " Being the mere creature of the law, it possesses only those properties which the charter of its creation confers upon it, either expressly or incidental to its very existence.  These are such as are supposed best calculated to effect the object for which it was created."  Speaking of certain properties pertaining to corporations, he further said: " They enable a corporation to manage its affairs, to hold property without the perplexing intricacies, the hazardous and endless necessity of perpetual conveyances, for the purpose of transmitting it from hand to hand.  It is chiefly for the purpose of clothing bodies of men in succession with these qualities and capacities that corporations were invented and are in use."  Among the powers of corporations given by our statutes are: 4. "To purchase, hold, and convey such real and personal estate as the purposes of the corporation may require, not exceeding the amount limited in this part; . . . . 8. To enter into any obligations or contracts essential to the transaction of its ordinary affairs, or for the purposes of the corporation."  (Civ. Code, sec. 354.)

The grant to Benrimo and his associates was also to their assigns.  There can be no doubt but that they might by the terms of the grant sell or assign the fran-

chise.  It seems to me too plain to require argument that the purchase by the plaintiff was strictly and directly within its powers and contributed necessarily and directly to its objects and purposes.  If any connection could be traced between the plaintiff and the passage of the special act of 1872, or it appeared that the act was obtained for the purpose of evading the constitutional inhibition, I could see how the case of *San Francisco* v. *Spring Valley Water Works, supra,* might apply.  But, in view of the facts in this case, I cannot regard the article of the constitution mentioned or the case last cited as having any application here.

Second.  Appellants urge that the evidence is insufficient to support the finding that plaintiff constructed the dam in 1875, or appropriated five hundred thousand gallons of water, or any water, or that it has used said water adversely to defendants.

1.  As to the construction of the dam there was no evidence except incidental references to it by witnesses, but there was no denial by any of the answers that plaintiff did construct a dam in 1875 as alleged, and this fact stands admitted.

2. As to the diversion of five hundred thousand gallons of water, or any water, which is denied, H. Dittrick, a civil engineer, testified: "I made measurements of the water there last year (July, 1894), know the flume that conducts the water from the creek to the San Luis reservoir.  The capacity of this flume is half a million gallons in twenty-four hours; made measurements in two different ways: 1. Measuring it by velocity; and 2. By actual measurement; had a large barrel and take the time how long it took to fill that barrel, and on the contents of it figured out the flow in twenty-four hours."

Mr. Nock, who was superintendent of plaintiff corporation from 1888 to 1894, said he had known the flume to carry two hundred and fifty thousand gallons, and has seen it carry four hundred thousand gallons.  He said he had never seen the flume run full, but it would carry all the waters of the creek in the summer time.

The size of the flume was shown to have been the same from the beginning. Defendants offered no evidence as to capacity of the plaintiff's flume. I think the evidence justified the finding as to quantity.

3. Was there an appropriation by plaintiff, and what was its nature? Appellants deny that the right was adverse to defendants, or that any appropriation was made. The evidence is clear that there was an appropriation. The only matter open to dispute is as to how the right was acquired and to what extent as against defendants' right. Appellants claim that there is no evidence of quantity taken prior to 1888.

Mr. Egan, superintendent from July, 1878, until August, 1888, when he was succeeded by Mr. Nock, testified that the company had diverted the water continuously since 1888, and that the size of the flume by which the diversion was made was the same then as now; that the water company had what its flume would carry all the time. He does not testify as to actual quantity, but I think the court might well have found that the quantity diverted has not been increased, but was the same all the time. At any rate, there would seem to be no good reason for holding otherwise from the evidence.

Evidence was admitted against defendants' objection to show how much water was required to supply the city of San Luis Obispo. I agree with appellants that the growing necessities of the town—assuming that they did grow—did not give plaintiff the right to more water than it had first appropriated, superior to rights that defendants may meanwhile have acquired, and this would be so, I think, whether plaintiff had or not the right of eminent domain; but the evidence might be admissible to show that plaintiff was keeping within the powers and objects of the corporation, and was not taking water in excess of its needs. It would not follow that because the town now requires five hundred thousand gallons daily that therefore the plaintiff appropriated that amount in 1875, and I do not understand that the court admitted the evidence to prove that fact alone.

Defendants say that if the town needed five hundred thousand gallons daily in 1894, it could not have needed so much in 1878 when the population was less, and they say this court will take judicial notice of the United States census for 1880 and 1890 to show this. We cannot say, as a fact, that less population in 1878 used less water than a greater population used in 1894. This would be carrying inference too far. If it was true, defendants should have proved it, and, when proved, there might have followed some inference that the appropriation of water was less then. If there was error in admitting the evidence it was harmless.

Third. It is claimed that the evidence is insufficient to justify the finding that the use of the water by defendants was subordinate to plaintiff's use thereof; and this because such could only be the case: 1. When an appropriation of a certain quantity of water had been made prior to defendants acquiring riparian rights; 2. By acquiring water rights from defendants, which could only be in writing, and there is none; 3. By adverse use, and there could be none in this case, because plaintiff only took what defendant suffered to flow by.

1. As we hold that plaintiff made an appropriation of a given quantity of water in 1875, it becomes necessary first to inquire as to defendant's rights at that time.

First on the stream above plaintiff's dam was the Estrada land. The Estrada land was in an early day, 1849, occupied by one Bonillo under Mexican grant; he sold his claim in March, 1869, to P. W. Murphy, but the grant lapsed, and no claim is made under it. Bonillo occupied the land up to 1872. It is not clear when Estrada went into possession; the defendants give the date more than twenty-two years prior to 1893, and the court finds this to be true. United States patent issued to him September 23, 1879. There is a good deal of evidence as to the use and appropriation of water made by Bonillo and Estrada before patent issued. It was public land when they occupied it. It does not appear

whether Estrada filed a pre-emption or a homestead.  The evidence as to the amount of water appropriated by Bonillo and Estrada prior to 1875 is conflicting.  It seems there was water taken and used on the Estrada place, and water used further down on the Goldtree place, and this latter place is the land apparently acquired by plaintiff.  The evidence shows an appropriation and use continuously for many years prior to 1875 on the Estrada place, and adversely to plaintiffs, but, as to the amount, the evidence is conflicting.  The Estrada garden is variously estimated at from six to thirty acres in extent.  But whether all the land was irrigated is not clear, nor is it clear just what the extent of the irrigable land was.  The witnesses are much confused and involved in their answers, and at times are unintelligible.  Apparently references were made to physical objects, a chart or map of which I infer was used at the trial, and which is not given in the record.  Looking at the record alone there would seem to be a preponderance of evidence against the finding as to the extent of land in the Estrada garden, and the land irrigated long before 1875, but there is not much disagreement as to size of the ditch during all the time.  The water came from a dam first erected to furnish power to run a mill, and there was evidence that when the mill was run there was no water for irrigation—the ditch could be used for only one purpose at the same time.  The trial court could best judge what evidence to believe and what to disbelieve, and we cannot now undertake, from the record, to sift the wheat from the chaff.  In view of the conflicting evidence, I think the finding of the court, as to the Estrada water right held to be prior to plaintiffs, should stand.

The court further found, as to the Estrada water right, the right to irrigate thirty-five acres of land, but subordinate to plaintiff's right to the water.  This finding rests upon the evidence of a greater use of water by Estrada since plaintiff's rights accrued than prior to that time.  The evidence is conflicting as to when this

greater use began, and as to the extent of the use, and as to whether the use was adverse to plaintiff or under claim of right or subordinate to plaintiff's right. Much evidence was introduced *pro* and *con* as to agreements entered into between plaintiff and some of the defendants—particularly those representing the Estrada lands—partly as to whether the money paid by plaintiff was for the right to the water, or as wages or compensation for looking after the water for plaintiff, or as to whether it was to avoid trouble with these parties. The evidence is conflicting, and we cannot say the court erred in the conclusions drawn from it.

The plaintiff does not claim under defendants by purchase or otherwise. It claims by appropriation, and the evidence tends to establish its claim. There was no attempt made by plaintiff to establish its right by agreement or purchase. The plaintiff's evidence tended to show that such was not the purpose of its payments of money, except in one instance, which would not change the result of the evidence, and hence the doctrine laid down in *Hayes* v. *Fine*, 91 Cal. 391, cited by defendants, does not apply.

Appellant makes the point, also, that there could be no appropriation of water by plaintiff by adverse use, for it only took what defendants suffered to flow by, and that defendants had riparian rights which could not be lost by nonuse, and no rights could be acquired by plaintiff by taking water below them. (Citing *Hargrave* v. *Cook*, 108 Cal. 73.)

The rights of upper riparian owners, as against the rights of lower appropriators of water, are very clearly stated by Mr. Justice Henshaw in the case cited. In that case, however, the riparian owner pleaded his rights as such. But in the case here no riparian rights were pleaded by any of the defendants. They pleaded only the right by appropriation. In the case of *Riverside Water Co.* v. *Gage*, 89 Cal. 410, it was decided that an answer pleading a prior appropriation, but which fails to allege that the defendant is entitled as a riparian

owner to any definite quantity of water, or what proportion of the waters of the stream he could reasonably exhaust for that purpose, is insufficient to raise an issue as to the extent of defendant's right as a mere riparian proprietor. The question of riparian rights does not therefore arise in this case.

It seems to me that from the evidence and the pleadings the question of adverse use is not necessarily involved in the claim of plaintiff or defendant, except, perhaps, as to defendant Harris.

Plaintiff and defendants allege appropriation and ownership, and also adverse use, and the court finds for plaintiff on the issue of adverse use. But the evidence tends to establish the right of plaintiff by prior appropriation, subject to certain prior rights of some of the defendants, and I do not therefore regard it reversible error, if the finding as to adverse use is not supported by the evidence, for plaintiff's right may stand upon prior appropriation even though it fails on other grounds.

Appellants, claiming under Estrada, contend that if they had the right to use a certain quantity of the water of the creek, they have the right to take it where and how they like, while the judgment is that they must take it only from a dam and ditch at a point of no practical use to them. (Citing Civ. Code, sec. 1412; *Ramelli* v. *Irish*, 96 Cal. 217; *Charnock* y. *Higuerra*, 111 Cal. 473; 52 Am. St. Rep. 195.) There can be no doubt that a riparian owner or an appropriator may change the place of diversion, and the latter may do so, if necessary, even upon the servient tenement when others are not injured by the change. The judgment here is, that the Estradas take the water to which they are entitled from a particular dam and ditch upon their land one hundred yards below the Estrada house, and the finding of the court, it is claimed, is not supported by the evidence. This limitation is not warranted by the evidence. I can find no evidence, and respondent points out none, by any witness, that to change the place of use on the Estrada place would injure plaintiff, and to justify the finding

this should have been made to appear. It may be very important to the use of water given the Estradas that its place of use be changed, and, if it can be done without injury to any other person, there is no reason for prohibiting it. The decree should be modified in this regard, and made to conform to the provisions of the Civil Code, section 1412, and the decisions of this court as to the right to change the place of use, found in the cases last above cited.

Respondent replies that there is no specification of the particulars wherein the evidence is alleged to be insufficient to justify this finding, and, for that reason, the evidence cannot be reviewed. (Citing *Thorne* v. *Hammond*, 46 Cal. 530.)

It is true, as a general proposition, that this court will not review the evidence in a bill of exceptions, unless it specifies the particulars in which the evidence is alleged to be insufficient to sustain the decision. (Code Civ. Proc., sec. 648.) But the various points raised have necessarily called attention to the fact that there is no evidence to sustain the finding, and, if there be no evidence, the party complaining could hardly be expected to point it out. In such case, the burden should be on the party sustaining the findings to call attention, at least, to enough evidence to justify the finding.

I think the point made by respondent, as to the necessity of pointing out wherein the evidence is insufficient to justify the findings, should hold good in some of the other assignments of error. I have, however, endeavored to notice all the material matters drawn in question by them.

The Jones and Moreland water right was next above that of Estrada. Jones purchased in 1882 from one Sandy Sumner, who testified that he went into possession under Bonillo in 1866. He took out water in a ditch by means of a dam in 1868, and used the water for mill power, for household purposes, and for stock, but did not use the water for irrigation, except a small garden patch once in two weeks. Moreland, who was

Jones' tenant, testified that he used the water for household purposes and for stock, and a little for irrigation (quantity not given). The remaining water was returned to the creek after the above uses. The court found that Jones and Moreland are entitled to divert the water for domestic purposes and for watering stock and carry the water to the old millsite, but the court subordinates the use of water for irrigation to the right of plaintiff. If these defendants had shown any given or ascertainable quantity of water used by Sumner for irrigation, I think it should stand on the same footing as that used for domestic purposes, for it was used for all purposes at the same time. But as no given quantity is proven to have been used for irrigation, and it seems to have been small at most, I think the court did not err in placing the limitation it did.

As to the findings of the court upon the Maria Y. Harris claim no objection is made. Defendants pleaded a certain lease of the Estrada lands and its assignment to plaintiff by way of estoppel. When offered in evidence by defendants it was refused by the court, and I think improperly. There was no ground of objection stated, and, for that reason, the objection should have been overruled. But I can see no good ground for refusing it. As evidence tending to show that plaintiff did not own the quantity of water it claimed it was admissible, and also as tending to admit defendants' right. As it turned out, however, it was, as is claimed by defendants, brought out on plaintiff's cross-examination, and as it got into the case through plaintiff it cured the error. At most, however, it was significant only as tending to show the facts above noted. It was not urged by defendants as proving, or tending to prove, an estoppel.

Defendants' specification of errors of law occurring at the trial have received attention so far as they have been urged in their brief.

My conclusion is that the judgment and order of the lower court should be affirmed, except that the limita-

tion as to the place of use of the Estrada water should be removed as herein pointed out, and that the decree, when modified as above suggested, should stand affirmed.

HAYNES, C., and BELCHER, C., concurred.

For the reason given in the foregoing opinion the judgment and order appealed from are affirmed, except that the limitation as to the place of the use of the Estrada water should be removed as herein pointed out, and the decree, when modified as above suggested, is affirmed.

McFARLAND, J., TEMPLE, J., HENSHAW, J.