[Sac. No. 4341. In Bank.—August 28, 1930.]

S. H. COWELL et al., Appellants, v. LYDIA T. ARMSTRONG et al., Respondents.

Treadwell, Van Fleet & Laughlin for Appellants.

John U. Calkins, Jr., Reginald H. Linforth, Calkins, Hagar, Hall & Linforth, H. G. Crawford, Frank Thunen, Hudson Grant, L. W. Butterfield, William F. Humphrey, Robert M. Searls, John Parks Davis, Huston, Huston & Huston, Earl D. White, Wyckoff & Gardner, Samuel M. Samter, H. M. Ball, G. P. Hurst, W. T. Belieu and Edson Abel for Respondents.

THE COURT.—This is an appeal by the plaintiffs from a judgment of nonsuit in favor of certain defendants appearing and from a portion of a default judgment against defendants not appearing.

The action was brought against more than two hundred defendants to establish alleged conflicting riparian rights in the waters of Putah Creek and for an injunction. Putah Creek has its headwaters in Lake County and thence flows through Napa County and forms a portion of the boundary line between Yolo County and Solano County. By their second amended and supplemental complaint the plaintiffs allege that they are the owners of about eight thousand eight hundred acres of land in Yolo County; that Putah Creek is a natural watercourse flowing in a general southeasterly direction toward the Sacramento Valley, and in the vicinity of the town of Winters continues in a general easterly direction by, through, over and upon the plaintiff's said lands; that the plaintiffs as riparian owners are entitled to have the waters of Putah Creek flow as they are wont to flow by, through, over and upon their lands "except as such flow is reduced by the reasonable use of said waters by other riparian owners on said stream, having due regard to the like right of the plaintiffs to make a reasonable use of the waters of said creek"; that in the winter months the waters of said creek overflow upon the lands of the plaintiffs, thereby moistening and irrigating them and depositing large quantities of silt, by reason whereof valuable

pasturage land is developed, upon which the plaintiffs feed large herds of cattle, and "that in order to overflow and irrigate the greatest quantity of said land all of the natural flow of the water of said creek is necessary and beneficial to said land and greatly adds to the productivity thereof." Continuing, the complaint alleges: "That during the summertime there is a gradual decrease in the amount of the water flowing in said creek, and by the first of June of each year there is flowing in said creek a quantity of water not more than sufficient to supply the lands of the plaintiffs, and other lands riparian to said creek with water for stock and domestic purposes, and during said period all of the natural flow of said creek is reasonably needed for stock and domestic purposes on said land, and said plaintiffs have for many years and now do, except when interfered with by the defendants as hereinafter alleged, use the water of said creek for the watering of livestock pastured upon their said lands, and all of the water of said creek naturally flowing therein after the first day of June of each year is necessary and beneficial for the watering of livestock upon said lands and if during said period water is diverted from said creek for irrigation or other purposes than for stock and domestic purposes, there will not be sufficient water in said creek for the watering of livestock and for domestic purposes upon the lands of the plaintiffs"; that "for the uses to which the lands of the plaintiffs are at present devoted, all of the water in said creek is required to irrigate the same naturally and said lands at all times reasonably require ten (10) cubic feet of water per second for stock and domestic purposes." The plaintiffs further allege that the defendants are owners of riparian lands on said stream above the lands of the plaintiffs, but that the defendants claim and assert the right to take and are taking "more than their fair share of the water of said creek as riparian owners, having due regard to the like right of the plaintiffs as riparian owners, and claims the right to divert water from said creek for the irrigation of lands at all times during the year and so as to deprive the plaintiffs of any water whatsoever for the watering of livestock or for domestic purposes. . . ." It was also alleged that the defendant B. C. Rogers has filed with the division of water rights an application for permission to appropriate

and store large quantities of the waters of Putah Creek for use on nonriparian lands.

Although it is alleged by the plaintiffs that the defendants constitute all of the owners of land riparian to Putah Creek, it now appears beyond dispute that all of the owners of lands riparian to said creek were not before the court. The plaintiffs, by the prayer of said complaint, sought a judgment decreeing the riparian character of their lands; that the defendants, and particularly the defendant Rogers, have no right to appropriate or store the waters of said creek, nor the right to divert any thereof to nonriparian lands; that the defendants have no right to divert any water for irrigation purposes so as to deprive the plaintiffs of sufficient water for the watering of livestock and for domestic purposes upon their lands; that the defendants have no right to divert any water for irrigation so as to deprive the plaintiffs of their fair share of the water of said creek for irrigation purposes, "having due regard to the like right of the defendants as riparian owners"; and to ascertain and determine the lands which are riparian to said creek and the amount of water to which each of the parties to the action is entitled for any of said purposes and to apportion said waters accordingly; also that the title of the plaintiffs be quieted as against the adverse claims of the defendants and for an injunction restraining the defendants from diverting water for nonriparian uses, and from diverting any water from said creek for irrigation purposes when the same is needed for stock and domestic purposes, and from diverting any more than their fair share for irrigation purposes as fixed and determined by the court.

Numerous defendants answered the complaint, denying the riparian character of the plaintiff's lands, admitting the riparian character of their own lands, and the use of waters generally for domestic purposes and irrigation, and denying that they are taking or diverting any waters of Putah Creek in excess of their fair share or to the injury of the plaintiffs. The defendant B. C. Rogers answered, admitting that he had filed the application substantially as set forth in the complaint, but denying that the same was without right. Special answers or cross-complaints of other defendants need not be noted for an understanding of the issues

presented. Many defendants served with summons defaulted.

At the close of the testimony introduced by the plaintiffs the defendants appearing moved for a nonsuit on grounds which will hereinafter be discussed. The court granted the favor of all said defendants except B. C. Rogers. The court made findings setting forth the deraignment of the plaintiffs' title to the lands described in their complaint and found that certain thereof are riparian to Putah Creek; that as against the defendant Rogers the plaintiffs were entitled to the natural flow and overflow of said stream, and concluded that as against Rogers the plaintiffs were entitled to have their title quieted and to an injunction. Judgment of nonsuit was accordingly rendered in favor of the other defendants appearing. Judgment against the defendant Rogers was rendered on the merits for the relief sought and Rogers has not appealed.

The court also rendered judgment against the defaulting defendants, decreeing, among other matters, "that said defendants have no right to divert any water from said creek for the irrigation of land so as to deprive the plaintiffs of sufficient water for the watering of livestock, and for domestic purposes upon their said lands; but livestock, within the meaning hereof, shall not be deemed to include livestock grown or pastured on said land for commercial purposes." The plaintiffs' appeal is from the judgment of nonsuit and from that portion of the default judgment which has just been quoted.

It is not now contended by the plaintiffs that the court should have ascertained the amount of the waters of the stream to which each of the parties to the action is entitled and apportioned the waters thereof accordingly, as it is finally conceded by the plaintiffs that all of the persons entitled to a portion of the waters of the creek were not before the court; nor was any proof of the defendants' need introduced. (See *Strong* v. *Baldwin*, 154 Cal. 150, 163 [129 Am. St. Rep. 149, 97 Pac. 178]; *Bathgate* v. *Irvine*, 126 Cal. 135 [77 Am. St. Rep. 158, 58 Pac. 442]; *Charnock* v. *Higuerra*, 111 Cal. 473 [52 Am. St. Rep. 195, 32 L. R. A. 190, 44 Pac. 171].) It is, however, urged by the plaintiffs that there were other issues which, on the evidence produced, should have been decided in their favor and which, if so decided,

would entitle them to a reversal of the judgments from which they have appealed. ▮ One of these is the issue that the use made of the waters by the plaintiffs in the summer-time, exclusively for watering their livestock, is superior to the use thereof by the defendants for irrigation, and that such superiority of use extends to livestock grown for sale.

The evidence is that the plaintiffs maintain on their lands about 2,000 head of beef cattle. During the flood season the cattle are kept in the mountain ranch, but in the summer-time they are driven down to the pasture lands which have been flooded by the winter overflow and which latter lands the court found are riparian to Putah Creek. In support of their contention that their right as riparian owners to water their commercial herds from the stream is superior to the right of the defendant to use. the water for irrigation, the plaintiffs rely on *Alta Land & Water Co.* v. *Hancock,* 85 Cal. 219 [20 Am. St. Rep. 217, 24 Pac. 645], *Wiggins* v. *Muscupiabe L. & W. Co.,* 113 Cal. 182 [54 Am. St. Rep. 337, 32 L. R. A. 667, 45 Pac. 160], *Smith* v. *Corbit,* 116 Cal. 587 [48 Pac. 725], and *Filippini* v. *Hewett,* 162 Cal. 111 [121 Pac. 376]. It does not positively appear from the evidence that, if the defendants did not use the stream for purposes of irrigation, some of the waters thereof in the summer-time would still. reach the plaintiffs' lands. It may indeed be stated that the record bears an inference to the contrary. This absence of positive proof may, and perhaps should, be considered a sufficient and conclusive ground for the order of nonsuit. Nevertheless, assuming, for the time being, the fact to be that sufficient water for the plaintiffs' needs would reach their lands were the waters not used for irrigation above, the contention of the plaintiffs then becomes pertinent. But we are not persuaded that the plaintiffs have cited, or can cite, any authority which will support their contention. In none of the cases relied upon do the facts disclose that any more than the ordinary number of domestic animals are involved; and the statements of the court in those cases in recognizing the distinction made by the common law between the right to the ordinary use of the water for man's natural wants, i. e., for domestic uses and for cattle, and the right to its use for his extraordinary or artificial wants (*Wiggins* v.

*Muscupiabe L. & W. Co.*, 113 Cal., p. 189), among which is its use for irrigation (*Alta Land & Water Co.* v. *Hancock*, 85 Cal., p. 230), in the absence of authority directly in point, must be applied to the facts to which they were obviously intended to apply, viz., for the use of stock and animals ordinarily kept to sustain the domestic needs of man. There is no indication in the cases relied upon that if the stock exceeded those necessary for the ordinary domestic uses, and increased to the proportions of an industry so that the primary object of the owner was to raise stock in large herds for the market, the common-law rule of preference would still apply. On the contrary it is indicated in at least one of the cases (*Wiggins* v. *Muscupiabe, supra*), that the rule of preference would not apply to the raising of stock for the market since such use of water would be in excess of man's natural needs and would constitute a use for artificial or extraordinary purposes, such as a contribution to his comfort and prosperity. ■ That this is so is also indicated by Wiel on Water Rights in the Western States, third edition, page 795 et seq., where, in discussing the common-law rule adverted to, it is stated: "Natural uses are those arising out of the necessities of life on the riparian land, such as household use, drinking, watering *domestic* animals"; and in the cases cited by him, among which are *Attorney-General* v. *Great Eastern Ry. Co.*, 23 L. T. (N. S.) 344, affirmed in L. R. 6 Ch. 572, wherein Lord Romilly states that unquestionably the terms "domestic purposes" would extend "to culinary purposes and to purposes of cleansing, washing, the feeding and supplying of an ordinary quantity of cattle, and so on." (See *Evans* v. *Merriweather*, 3 Scam. (Ill.) 496 [38 Am. Dec. 106]; *Lux* v. *Haggin*, 69 Cal. 255, 407 [4 Pac. 919, 10 Pac. 674]; 1 Kinney on Irrigation and Water Rights, 2d ed., p. 825; *Caviness* v. *La Grande Irr. Co.*, 60 Or. 410 [119 Pac. 731, 735]; Mills' Irrigation Manual, pp. 19, 20; Gould on Water Rights, 3d ed., p. 397.) Some of the authorities even indicate that in hot and arid regions water for irrigation may ascend to the classification of a natural want of man (see *Evans* v. *Merriweather, supra,* quoted from in *Lux* v. *Haggin, supra,* at p. 406), as distinguished from its general classification as an artificial want or use (*Minor* v. *Gilman,* 12 Moore P. C. 131 [14 Eng. Reprint, 861]).

■ It is obvious that the plaintiffs have failed to sustain their contention that they are entitled to the use of the stream to water their commercial herds before the defendants may take water for irrigation, and we doubt that any authority could be found which favors, as between these two uses, one of them over the other. We are of the opinion that it is unnecessary to do so under the circumstances of this case and that here we may be guided by the general principle that each of the riparian owners on the stream is entitled to exercise his usufructuary right in the waters of the stream in common with all of the other. riparian owners so as to make the most beneficial use of his land, limited only by what is reasonable, having due regard to the common right of the other riparian owners. Under the circumstances of this case it must therefore necessarily be concluded that the plaintiffs and the defendants all are entitled to a reasonable use of the waters of the stream for irrigation and for the raising of stock for commercial purposes. ■ This being so, the plaintiffs' case falls in the absence of any proof in the record, first, that any water normally reaches the plaintiffs' lands in the summer season, and, second, that the defendants were making any unreasonable use of the waters of the stream, having due regard for the plaintiffs' rights.

■ It cannot be questioned that the defendants, in the absence of any evidence to the contrary, are to be presumed to be making not more than a reasonable use of the waters of the stream. (*Coleman* v. *Le Franc*, 137 Cal. 214 [69 Pac. 1011].) There was evidence that in the summer months the stream for some distance above the plaintiffs' lands percolated below the bed of the creek which, during that season, consisted of practically nothing more than disconnected pools or ''pot-holes,'' and that some of the defendants had installed pumps to raise water from the underground stream, and several of such pumps were raising water from these so-called ''pot-holes.'' No contention is made that if the defendants are entitled to water for irrigation they may not raise their reasonable share thereof by the use of pumps. (*Charnock* v. *Higuerra, supra.*) It was also in evidence that the plaintiffs had on their riparian lands five living wells which could be utilized in the dry season for watering stock. In the absence of any evidence

that the defendants are taking more than a reasonable share of such waters there is nothing upon which the court could have based a conclusion that the waters in excess of such a reasonable use by them would normally reach the plaintiffs' lands or that the waters, if no use thereof were made for purposes of irrigation, would normally at that season of the year flow, by, through, and upon the plaintiffs' lands in a stream above the surface of the ground. As it was stated in *Coleman* v. *LeFranc,* (137 Cal. 217): "Plaintiffs' remedy would not be to enjoin altogether any use of the water by defendants, but to have the respective rights of the parties determined as riparian owners; and before plaintiffs could have the aid of the court to enjoin defendants' use they would have to show that such use was in excess of their rights and resulted in plaintiffs' injury." (See *Oliver* v. *Robnett,* 190 Cal. 51, 55 [210 Pac. 408].)

The above discussion sufficiently disposes of the plaintiffs' contention that the order granting the motion for a nonsuit is not supported by any of the grounds upon which the motion was made. ■ The plaintiffs nevertheless insist that they have established a cause of action to quiet their title as riparian owners as against the defendants in whose favor the nonsuit was granted and that for this purpose they have proved their requirement for at least ten second-feet of water for the watering of their livestock. But the plaintiffs are met with the same difficulty, that is, that no infringement upon their title has been shown. (See *Hudson* v. *Dailey,* 156 Cal. 617, 623 [105 Pac. 748].)

■ If it may be said, as contended by the plaintiffs, that some of the defendants by their pleadings admit having continuously diverted by the use of pumps more than their fair share of the waters of the stream, the evidence shows indisputably that the same condition existed to the knowledge of the plaintiffs since at least the year 1911. One of the grounds of the motion for a nonsuit was that the plaintiffs' case was barred by laches and the statute of limitations. In 1913 the plaintiffs filed a complaint against the same defendants or their predecessors seeking to restrain the defendants from operating the pump along Putah Creek and for damages. It appears that no further prosecution

of that action was attempted and nothing was done by the plaintiffs until 1922, when the complaint in the present action was filed. There is, therefore, merit in the contention that the cause of action to quiet title against such use is now barred. (See *Pabst* v. *Finmand*, 190 Cal. 124 [211 Pac. 11].) Even assuming, in accord with the plaintiffs' contention, that the introduction in evidence by the defendants of the complaint filed in 1913 is an admission by them of the truth of the facts alleged therein, nevertheless such admission can be taken to apply only to the time to which the allegations referred and does not constitute an admission that the cause of action then stated and which accrued about 1911 could be prosecuted successfully more than ten years later. ■ Furthermore, an adjudication that the plaintiffs are entitled as against the defendants to have the waters of said creek flow down to their lands as they are wont and accustomed to do, without an adjudication as to the amount to which each of the parties, both plaintiff and defendant, is entitled, is subject to be set aside for uncertainty and would therefore be unenforceable. (*Steinberger* v. *Meyer*, 130 Cal. 156 [62 Pac. 483] ; *Rogers* v. *Overacker*, 4 Cal. App. 333 [87 Pac. 1107].) It is also apparent that the plaintiffs are not seriously pursuing any contention which involves an apportionment to sustain it, that is, in any case where the plaintiffs' rights are correlative with those of the defendants rather than superior to them. These contentions might be pertinent were the plaintiffs successful in maintaining their position that they are entitled to water for their herds of beef cattle before the defendants are entitled to take any for purposes of irrigation.

The order granting the nonsuit is sufficiently supported by the grounds herein discussed and a discussion of other grounds or other points is deemed unnecessary.

In the absence of any proof as to the amounts of water needed for purposes of irrigation by the defaulting defendants, no contention is made that the court, in view of the fact that the rights of such defendants and of the plaintiffs are correlative, could well have entered a more favorable judgment for the plaintiffs as against such defendants, nor that the court, as to all defendants except Rogers, could

have entered any judgment on the showing made by the plaintiffs upon which to base a plea of *res judicata*.

The judgment is affirmed.

Rehearing denied.