May Term,
1855.

DILLING
v.
MURRAY.

---

DILLING *v.* MURRAY.

Proceeding by *A.* against *B.* to enjoin *B.* from obstructing the flow of the water of a stream to *A.'s* mill, by the manner of erecting and maintaining a dam above it. The complaint stated that for, &c., the plaintiff had been the owner of a mill, &c., propelled by water on his own land; averred the recovery of a judgment against *B.* for such obstruction; that the defendant still kept up the dam, &c.; and that *A.'s* mill had thereby been rendered valueless. *Held*, that the complaint was not defective for omitting to show that the obstruction of the water was unnecessary to *B.* in the fair and reasonable use of the stream.

A party to a judgment can not impeach it collaterally, on the ground that it was rendered upon false testimony.

Every riparian proprietor has an equal right to the flow of the water through his land; and no one has a right to use it to the material injury of those below him. If he diverts the stream, he must return it to its natural channel when it leaves his estate.

But it is not every injury to a proprietor below that will confer a right of action: it is necessary, in every such case, to take into consideration the capacity of the stream, the adaptation of machinery to it, and all the attendant circumstances; and when all these are properly considered, if the proprietor below is materially injured, when considered in relation to the facts of the particular case, he is entitled to redress.

*Wednesday,*
*June 6.*

APPEAL from the *Wayne* Court of Common Pleas.

GOOKINS, J.—This was a proceeding instituted by *Murray* against *Dilling*, in the *Wayne* Circuit Court, and trans-

ferred to the Common Pleas, the object of which was to enjoin *Dilling* from obstructing the flow of the water of a stream to the plaintiff's mill, by the manner of erecting and maintaining a dam above it.

The complaint states that for fourteen years the plaintiff has been the owner of a mill and manufactory propelled by water on his own land; that in the spring of 1850 the defendant erected a dam across the stream above the plaintiff's land, by which the water was diverted from its natural channel, and the flow of it to his mill prevented; that he brought an action against the defendant for said injury, to which he pleaded not guilty, and in *August*, 1851, he recovered a judgment against the defendant for the damages he had then sustained; that the defendant keeps up his dam, and still prevents the flow of the water; and that his mill, which was worth 3,000 dollars, is thus rendered valueless.

The defendant demurred to the complaint, because it did not show that the obstruction of the water was unnecessary to the defendant, in the fair and reasonable use of the stream. The demurrer was properly overruled. It does not appear from the complaint that the defendant had any use for the water. He is not charged with the erection of a mill, but a dam.

The answer admits the erection of the plaintiff's mill; but avers that for ten years previous thereto the defendant had had in full operation a mill just above it on the same stream, and had been accustomed to use all the water of the stream; that since the erection of the plaintiff's mill he has so used the water as to preserve the plaintiff's rights as far as in his power. He admits the recovery of the judgment, but seeks to impeach it for testimony given on the trial which he says was false. He states that his mill is on his own land; and that he always intends to use the water with every possible regard to the plaintiff's rights. He denies having diverted the stream, but alleges that he uses the water for his mill, and then permits it to flow freely down the channel; and particularly since said trial he has not allowed the water to be retained when he

was not using it himself. He claims that having erected his works long before the plaintiff's, he has a paramount right to the use of the water, doing him no unnecessary harm.

The plaintiff demurred to so much of the answer as sought to impeach the judgment, and the demurrer was correctly sustained. The reply denies the affirmative matter set up in the answer.

There was a trial by the Court, which resulted in a judgment for the plaintiff, and an order that the defendant should take down and remove a dam across the stream mentioned in the complaint, called the new dam, so as not to obstruct the waters of the stream; and the defendant was further ordered so to regulate and use the water at his works as not to detain the same longer than three hours at one time, except in the night, and that he commence letting it out early in the morning, and was enjoined from using the water otherwise.

It appears from the evidence taken in the cause, that the defendant was the owner of an oil-mill, the machinery of which was propelled by water taken from the stream, by means of a dam and race, all upon his own land. How long his mill had been erected does not appear. About fourteen or fifteen years ago, but since the erection of the defendant's mill, the plaintiff erected a woolen factory and saw-mill, about half or three-quarters of a mile below the defendant's, supplied by water in the same manner, and situated upon his own land. The capacity of the stream was not such as to furnish a constant supply, except in time of high water; and at low and ordinary stages the water was used by gathering heads. The plaintiff seems to have had usually a sufficiency of water at his mill until 1850, when the defendant erected a saw-mill, on the same race, below his oil-mill; and constructed a new dam, below and near the old one. Overshot wheels had been previously used in the plaintiff's and defendant's mills, but the wheel used in the saw-mill was of the kind called flutter-wheels, and required about three or four times as much water as the former kind. Since the erection

of the new dam and saw-mill, the plaintiff has not been able to run his establishment more than half as much as before.

The rule of law which governs cases of this kind is well established. Every riparian proprietor has an equal right to the flow of the water through his land, and no one has a right to use it to the material injury of those below him. He has no property in the water itself; but only a right to use it as it flows along. If he diverts the stream he must return it to its natural channel when it leaves his estate. This rule is laid down by Ch. *Kent;* 3 Kent's Comm. 439; and is the clear result of all the authorities. But it is not every injury to a proprietor below that will confer a right of action, or justify an order to remove the obstruction. In every detention of water for the purposes of machinery, there is some loss by evaporation and absorption; and, especially in a stream like this, there would necessarily be some irregularity in the flow of the water. *Pothier* lays down the rule, that the owner of the upper stream must not raise the water by dams, so as to make it fall with more abundance and rapidity than it would naturally do, and injure the proprietor below. The rule thus stated is too strong for the present case; the capacity of the stream being such that the water, if used at all, can not be allowed to maintain a continuous and regular flow.

This question was much considered in the case of *Palmer* v. *Mulligan,* 3 Caines 307, where a majority of the Court, *Kent* and *Thompson,* Js., dissenting, held, that although the erection of a dam above made it so much more difficult for the owner of a mill below to bring logs to his mill as to require an additional hand for every twenty-five logs, and though the rubbish from the upper mill was an inconvenience to the proprietor of the lower, to the amount of 250 dollars a year, yet these were injuries for which the proprietor below had no remedy.

The difficulty is not so much in the rule as in the application of it; in which it is necessary to take into consideration the capacity of the stream, the adaptation of machinery to it, and all the attendant circumstances; and,

when all these are properly considered, if the proprietor below is materially injured; that is, materially, when considered in relation to the facts of the particular case, he is entitled to redress. In the case above referred to, the mills were upon the *Hudson* river, which is a large stream; and even there two of the judges thought the plaintiff ought to recover. An injury to the same extent to a mill situated upon a small stream would doubtless have entitled the plaintiff to an action.

In the case before us, the proof shows that the dam which was ordered to be removed was an obstruction to the stream; and that if so used as to gather a head of any considerable use to the saw-mill, it would occasion an unreasonable detention of the water. It was properly ordered to be removed. Although there is much conflicting testimony in regard to the capacity of the stream, there is very little, if any, in regard to the quantity of water required to propel the saw-mill wheel. The proof on that point tended strongly to show that the wheel was unsuited to the stream. Upon the whole case, we think the judgment ought to be affirmed.

*Per Curiam.*—The judgment is affirmed with costs.

*J. Rariden*, for the appellant.

*J. S. Newman, J. P. Siddall* and *J. B. Julian*, for the appellee.