[Civ. No. 2891. First Appellate District, Division Two.—August 27, 1919.]

# HARRY CLYDE DRAKE, Appellant, v. CHARLES L. TUCKER et al., Respondents.

[1] WATERS AND WATER RIGHTS—RUNNING WATER—RIPARIAN RIGHTS. Riparian rights do not mean ownership in any special portion of the water of a stream until such water is actually taken and used. In running water there can be no absolute ownership.

[2] ID.—DEED—RIPARIAN LAND—RESERVATION OF WATER—CONSTRUCTION OF.—Under a deed reserving to the grantors the amount of water "held, used and claimed" by the former owner of the property, such grantors are entitled to only such amounts of water as were used by such former owner, the rights in the remainder of the water, in the absence of other priorities, being governed by the law applicable to riparian owners.

[3] ID.—USE OF WATER BY RIPARIAN OWNERS—RIGHT TO IRRIGATE.— A riparian owner may use the whole of the stream if it is necessary to satisfy his natural wants, and may consume all the water for his domestic purposes, including water for his stock, but if he desires to use it for irrigation or manufactures, and there be a lower proprietor to whom its use is essential to supply his natural wants, or for his stock, he must use the water so as to leave enough for such lower proprietor. Where the stream is small, and does not furnish more than sufficient to answer the natural wants of the different proprietors living on it, none of the proprietors can use the water for either irrigation or manufacture.

[4] ID.—WHEN RIPARIAN OWNER ENTITLED TO WATER—RIGHT TO DIVERT ON LAND OF UPPER OWNER.—A riparian proprietor is entitled only to the water after it reaches his land in its natural flow, and if in the natural flow of the stream there is insufficient water conducted to defendant's land for his uses, he has not, as a riparian owner merely, the right to go on the land of an upper proprietor and divert the water from there.

[5] ID.—DIVISION OF WATER IN PROPORTION TO ACREAGE — PROPER JUDGMENT.—As between the parties to the action, a judgment

3. Riparian owner's right to use and detain water and to the natural flow of the stream, note, 79 Am. Dec. 638.

Meaning of phrase "domestic purposes" in relation to riparian rights, notes, Ann. Cas. 1912B, 621; Ann. Cas. 1914D, 563.

Nature of riparian rights and lands to which they attach, notes, 9 Ann. Cas. 1235; Ann. Cas. 1913E, 709; Ann. Cas. 1917C, 1026.

Correlative rights of upper and lower riparian proprietors generally, note, 41 L. R. A. 737.

dividing the balance of the water, after the natural wants of the parties are satisfied, between them for irrigation purposes in the proportion that the acreage of each bears to the entire acreage of their riparian lands, is proper and reasonable.

[6] EVIDENCE—CONSTRUCTION OF WRITTEN INSTRUMENTS—ADMISSIBILITY OF PAROL TESTIMONY.—When written instruments are not ambiguous, they may not be varied by parol testimony; and even though, during the course of the trial, the court considers certain instruments ambiguous, it does not commit error in refusing to allow the introduction of evidence of the negotiations and understandings of the parties thereto at the time they were executed where, in arriving at its judgment, it does not treat the instruments as ambiguous, but construes them correctly without the aid of parol evidence.

APPEAL from a judgment of the Superior Court of Napa County. A. B. McKenzie, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Clarence N. Riggins for Appellant.

John T. York and Percy S. King for Respondents.

LANGDON, P. J.—This is an appeal by the plaintiff from a judgment of the superior court in and for Napa County, dividing the waters of Ritchie Creek between the plaintiff and the defendants. The principal question presented to this court is as to the construction of certain deeds in the record. The facts surrounding the execution of said deeds are briefly as follows: From 1867 to 1905 George W. Tucker, the father of the defendant Charles L. Tucker, owned 146 acres of land situated along Ritchie Creek, a map of which land is in evidence in this action. During a part of this time he sold about three thousand gallons per day of the water of said creek to the county, and in addition used what he required thereof for domestic purposes in and about his house and barn. In 1905 he deeded his property to his children, who held it as tenants in common. One of the children died shortly thereafter, and the remaining children partitioned the land among themselves by two deeds, which it is conceded were executed as a part of the same transaction, and which deeds are the key to the solution of the controversy here. In the first deed from Charles L. Tucker, one of the respondents here, and George H. Tucker, to their sisters, Lila J. Eachus and Martha

A. Culver, a portion of the land was conveyed, which has since by mesne conveyances become the property of the plaintiff. This land is higher on the stream than the defendants' land. The deed conveying it contains a clause granting to plaintiff's predecessors the right to the amount of water diverted by George W. Tucker at a point in Ritchie Creek specified therein. At the same time another deed was executed by Eachus, Culver, and George H. Tucker to Charles L. Tucker, respondent, conveying an undivided three-quarter interest in the portion of the land now owned by defendant and containing a clause granting to said Charles L. Tucker the right to divert water from a point specified and situated upon the land now held by the plaintiff, after the amount formerly diverted by George W. Tucker had been reserved. Defendant has maintained this point of diversion up to the time of the action. Plaintiff has resided on his land for about four years and has diverted water from a point below defendant's said point of diversion until May, 1917, when plaintiff placed a five-inch pipe in the stream above defendant's point of diversion and diverted substantially all the water of the stream, so that the defendant was deprived of water necessary for domestic and irrigation purposes. Defendant removed the pipe-line of plaintiff so placed, and plaintiff sought an° injunction.

The clauses in the deeds upon which plaintiff and appellant bases his claim were construed by the trial court in a manner which is in accordance with our own conclusions. Defendant contends that as a riparian owner, he is entitled to his proportion of the water except as that right is modified by the deeds. The first deed in which Charles L. and George H. Tucker are the grantors and Lila J. Eachus and Martha A. Culver, plaintiff's predecessors in title, are the grantees, conveys: "All of the water right acquired, or the right to divert the waters of Ritchie creek acquired by George Tucker, the grantor of all the parties to this instrument, at any time in connection with the above described tract, or in connection with any other tract of which the foregoing tract was a part and which said water is now diverted at a point in Ritchie creek southwest of the most southerly point of the above described land."

The second deed in which Lila J. Eachus, Martha C. Culver, and George H. Tucker are grantors and Charles L.

Tucker, the defendant, is the grantee, contains the following language: ''Granting to the said Charles L. Tucker the right to divert water from Ritchie creek at a point about four hundred and fifty feet southwest of the main county road, and below the point where F. Salmina & Co. now divert water from said creek; it being understood and agreed that Charles L. Tucker shall only have the right and privilege of using and diverting the overflow from Ritchie creek after Lila J. Eachus and Martha A. Culver, or either of them, have used all of the water formerly held, used or claimed by George Tucker, the former owner of the 146 acre tract this day divided among the parties hereto, they may desire for any and all purposes, upon the land this day deeded to them, and after said F. Salmina & Co. has used its share of said water; and it is understood and agreed that no right, title or interest in any water right of said George Tucker, or any water right acquired since said property was granted to the parties hereto is hereby granted.'' This deed reserves to the grantors only the amount of water formerly ''held, used, or claimed'' by George Tucker. The court admitted evidence of the amount of water used by George Tucker, and found that the amount was about three thousand gallons per day sold to the county, and sufficient water for his domestic uses about his home and barn, and the court therefore allowed the plaintiff such amounts before allowing the defendant any water at all, and after such amounts were taken by the plaintiff, if any water remained, the court allowed the defendant sufficient water for his domestic uses and divided the balance, if any, between the plaintiff and defendant for irrigation in the proportion that the acreage of each bore to the entire acreage of the riparian land. [1] The decisions are to the effect that in running water there can be no absolute ownership; that riparian rights do not mean ownership in any special portion of the water of a stream until such water is actually taken and used. (*Kidd* v. *Laird,* 15 Cal. 161, 179, [76 Am. Dec. 472] ; *Eddy* v. *Simpson,* 3 Cal. 249, 252, [58 Am. Dec. 408] ; *Palmer* v. *Railroad Com.,* 167 Cal. 163, 168, [138 Pac. 997] ; 2 Farnham on Waters and Water Rights, pp. 1565, 1566.) [2] In view of these decisions, the language of the deed is clear. George W. Tucker ''held, used, and claimed'' only the portion of the water actually taken and used by him, which amount was found by the court upon substantial

evidence. The deed from Charles L. Tucker by which appellant claims the grantor deeded away his riparian rights must be construed in connection with the deed to him, as both are admittedly a part of the same transaction. We think the language of that deed bears out the construction placed upon it by the court. The deed contains a specification of the exact water conveyed by it in the words: "And which said water is now diverted at a point in Ritchie creek southwest of the most southerly point of the above described land." The evidence regarding the amount of water diverted at that point at the time the deeds were executed is in harmony with the judgment.

As the deeds merely reserved to the plaintiff's predecessors such amounts of water as the court found were used by George Tucker—the rights in the remainder of the water of the creek, as between the plaintiff and the defendant, are governed by the law applicable to riparian owners. **[3]** In answer to appellant's contention that he is entitled to use the water for irrigation on his land before the defendant is entitled to any water at all for domestic or other uses, we quote the language found in the decision in the case of *Alta Land & Water Co.* v. *Hancock,* 85 Cal. 219, 230, [20 Am. St. Rep. 217, 224, 24 Pac. 645, 647] : "So far, the right of a riparian proprietor to the use of the water for purposes of irrigation at all has been assumed, rather than determined, and has been properly regarded as among the last, though perhaps not the least important, of his riparian rights; one that must be always held in subordination to the rights of all other riparian proprietors to the use of water for the supply of the natural wants of man and beast, extended to the occupants of each and every tract held as an entirety, bordering upon the stream, whatever its extent. These natural wants supplied and protected, the right to a reasonable use of the surplus water by the riparian proprietor in common with others in like situation, for purposes of irrigation, has been acknowledged and recognized, but it cannot be extended even by implication." (See, also, *Smith* v. *Corbit,* 116 Cal. 587, [48 Pac. 725] ; *Learned* v. *Tangeman et al.,* 65 Cal. 334, [4 Pac. 191].) What is a reasonable use depends upon all the facts and circumstances of the case. (*Ferrea* v. *Knipe,* 28 Cal. 341, [87 Am. Dec. 128] ; *Union Mills etc. Co.* v. *Ferris,* 2 Sawy. 176, [Fed. Cas. No. 14,371] ;

*Dilling* v. *Murray*, 6 Ind. 324, [63 Am. Dec. 385]; *Elliot* v. *Fitchburg R. R. Co.*, 10 Cush. 191, at pp. 193, 194, [57 Am. Dec. 85]; *Timm* v. *Bear*, 29 Wis. 254, 265.) The court here heard evidence upon the needs of the parties, the nature of the land, the volume of the stream and its variation in this respect at different seasons, and we think properly decided that it would be an unreasonable use of the water under all the facts and circumstances for the plaintiff to use it for irrigation before the domestic uses of the defendant had been satisfied. The court, therefore, after reserving to the plaintiff the amount reserved to him by the deeds, allowed him water for his domestic uses and then allowed to the defendant water for his domestic uses before allowing the plaintiff any water for irrigation. After the domestic uses of the defendant were satisfied, then the water was divided between the plaintiff and defendant for irrigation, having regard to the number of acres of riparian land owned by each. The case seems to fall within the rule announced in the case of *Evans* v. *Merriweather*, 3 Scam. (Ill.) 492, [38 Am. Dec. 106], where it is said that a riparian owner may use the whole of the stream if it is necessary to satisfy his natural wants. He may consume all the water for his domestic purposes, including water for his stock, but if he desires to use it for irrigation or manufactures, and there be a lower proprietor to whom its use is essential to supply his natural wants, or for his stock, he must use the water so as to leave enough for such lower proprietor. Where the stream is small, and does not furnish more than sufficient to answer the natural wants of the different proprietors living on it, none of the proprietors can use the water for either irrigation or manufacture.

[4] It is not contended that the land of the defendant is nonriparian land. As a riparian proprietor, he is entitled, it is true, only to the water after it reaches his land in its natural flow, and if in the natural flow of the stream there is insufficient water conducted to defendant's land for his uses, he has not, as a riparian owner merely, the right to go on the land of an upper proprietor and divert the water from there. (*Anaheim Union Water Co.* v. *Fuller*, 150 Cal., at p. 332, [11 L. R. A. (N. S.) 1062, 88 Pac. 978].) A riparian proprietor's title to the water begins only when it reaches his land. (*Hargrave* v. *Cook*, 108 Cal. 72, [30 L. R. A. 390,

41 Pac. 18].)    But in the present case, defendant does not rely upon his riparian right for the privilege of going upon plaintiff's land and diverting the water.    The deed to him from plaintiff's predecessor in interest has facilitated the enjoyment of his riparian rights, and by virtue of the contract between the parties, as contained in said deed, defendant is given the right to divert water from Ritchie Creek at a certain point on plaintiff's land, after plaintiff has used for any purpose he may desire the amount of water "held, used, or claimed by George Tucker," the former owner, which amount has been found by the court and saved to the plaintiff.

[5]    With respect to the fractional division of the water for purposes of irrigation, there is no evidence before the court as to whether or not there are yet other lower riparian owners, but if there are, of course, the rights of such owners are not affected by this judgment.    As between the parties hereto, the division seems to us proper and reasonable, and if there are other parties who have yet independent rights, in a proper proceeding the rights of the riparian proprietors now before the court may be declared to be subject to such rights of such third parties, but such adjudication would not change the relative rights of the parties hereto as between each other.

Appellant objects to the holding of the trial court that certain land which was owned by the plaintiff but was divided from his main tract and from Ritchie Creek by a strip of land used for the operation of an electric railroad was nonriparian land.    The fee to the strip of land occupied by the railroad had been granted to said company by plaintiff's predecessor in title.    It becomes unnecessary for us to pass upon this question of law, because, as pointed out by the respondent, this ruling was not injurious to the plaintiff, for the reason that the court held that the land of both the plaintiff and defendant lying north of said railroad was nonriparian, and, as shown by the map, more of the defendant's land was thus held to be nonriparian than of the plaintiff.    As the water was divided in proportion to the acreage of riparian land held by each, after reserving certain amounts to the plaintiff, the plaintiff would have received less water had the court held this strip of land to be riparian.

Appellant objects that he was not allowed to introduce evidence of the negotiations and understandings of the parties

to the deeds at the time they were executed. **[6]** The rule is, of course, beyond dispute that when written instruments are not ambiguous, they may not be varied by parol testimony. The plaintiff himself admits that he does not consider these instruments ambiguous, but relies upon certain language used by the court in the course of the trial which he contends shows that the court considered these instruments ambiguous. The answer to this contention is that in arriving at its judgment, the court did not treat the instruments as ambiguous, but construed them without the aid of parol evidence, and this court finds that construction to be correct. It cannot be held, therefore, that these instruments are ambiguous, requiring the aid of parol testimony for their interpretation.

The judgment is affirmed.

Haven, J., and Brittain, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 23, 1919.

All the Justices concurred.