[Civ. No. 10832. Third Dist. Mar. 15, 1965.]

GEORGE L. DEETZ et al., Plaintiffs, Cross-defendants and Respondents, v. VIRGINIA L. CARTER, Defendant, Cross-complainant and Appellant.

852

Michael T. Hennessy for Defendant, Cross-complainant and Appellant.

Lorenzen & Otis and David Emery Otis for Plaintiffs, Cross-defendants and Respondents.

FRIEDMAN, J.—The parties are owners of adjoining agricultural properties in Siskiyou County. The land of Mr. and Mrs. Deetz, plaintiffs, lies easterly of the property owned by Mrs. Carter, defendant, and is somewhat lower in elevation. Various small streams traverse the Carter property and are used by both parties for irrigation purposes. One of these streams, called Cold Creek, originates in springs above the Carter property, flows through the property and down to the Deetz ranch. While it is only 2 feet wide and 10 inches deep, it has a steady year-round flow. The trial court found that plaintiffs and their predecessors have always used the entire flow of Cold Creek for domestic and agricultural purposes. The parties now assert conflicting riparian interests in the water of Cold Creek.

Cold Creek is the only stream providing the domestic supply of the Deetz family. The entire creek flow is diverted into a ditch and led through a pipe to the house. The water is used in the Deetz home and barn and for the garden sprinkling system. Any surplus beyond household needs is used for agricultural purposes. Cold Creek was never diverted onto the Carter property before the incidents out of which this litigation arose.

On several occasions between 1956 and 1962 Mrs. Carter caused water to be diverted from Cold Creek for irrigation and livestock watering. One means of diversion was a ditch on the Carter ranch which took water through the Carter pens and corrals, ultimately bringing it back to the natural channel which is above the Deetz boundary. This channel was called "Y ditch." Members of the Deetz family testified that whenever a diminished downstream flow evidenced a diversion

of water, they went upstream to turn the water back into the natural channel. In July 1962 a bulldozer became stuck in the mud on the Carter property near Cold Creek, causing the creek to become very muddy. To prevent the water from flowing round the bulldozer, Mrs. Carter diverted the stream into Y ditch. After this incident, the present action was filed.

The complaint alleged both diversion and pollution of Cold Creek. Various members of the Deetz family testified that when the creek was flowing at its normal level, the water was clear, but if the level dropped the water became muddy, fouling pipes and appliances. Expert testimony demonstrated that samples taken in July and September 1962 at the point where the stream enters the Deetz ranch, had a bacteria count above the maximum standard for drinking water. The court found that this particular instance of pollution was an isolated one, caused by dead cattle on the Carter ranch, and did not support a finding that Mrs. Carter had polluted the stream.

On conflicting evidence the court found that Cold Creek follows a natural channel through the Carter ranch down to the Deetz property. As originally filed, the trial court decree declared that the entire flow of Cold Creek was necessary for plaintiffs' domestic use. Later this recital was amended to read: ''That the entire flow of Cold Creek . . . is necessary for the agricultural and domestic use of Deetz.'' Mrs. Carter was enjoined from interfering with the rights of Deetz and from polluting the stream. She appeals.

█ Under settled principles of California water law, defendants' upstream diversion entitles plaintiffs to an injunction only if the diversion leaves plaintiffs insufficient water to satisfy their reasonable demands for beneficial use. (*Meridian, Ltd.* v. *City & County of San Francisco,* 13 Cal.2d 424, 446 [90 P.2d 537, 91 P.2d 105] ; see also *Ivanhoe Irrigation Dist.* v. *All Parties,* 47 Cal.2d 597, 621-623 [306 P.2d 824].)

█ In the apportionment of water between riparian claimants, need for domestic purposes receives first preference. (Wat. Code, § 106.) ''Without question the authorities approve the use of water for domestic purposes as first entitled to preference. █ That use includes consumption for the sustenance of human beings, for household conveniences, and for the care of livestock.'' (*Prather* v. *Hoberg,* 24 Cal.2d 549, 562 [150 P.2d 405] ; see also *Drake* v. *Tucker,* 43 Cal.App. 53, 56 [184 P. 502].) Priority conferred on domestic users by Water Code section 106 is a statutory extension of a tradi-

tional preference accorded to "natural" over "artificial" uses. (See *Lux* v. *Haggin*, 69 Cal. 255, 406-409 [4 P. 919, 10 P. 674].) There was a question whether the common-law preference for natural uses was available only to an upper against a lower riparian owner; or conversely, whether a downstream claimant could invoke it against one upstream. (1 Wiel, Water Rights (3d ed.) p. 797.) In *Drake* v. *Tucker, supra*, 43 Cal.App. 53, the court reserved domestic water for both owners before allowing the upper user any water for irrigation. Likewise, in *Prather* v. *Hoberg, supra*, 24 Cal.2d at page 562, a dictum states that equity will protect the lower riparian's domestic use against the upstream claimant's commercial use. ■ Finally, it should be noted, Water Code section 106 makes no distinction between upstream and downstream users. The domestic water need of plaintiffs, as downstream riparian owners, is entitled to priority over the nondomestic need of defendant, the upper riparian.

■ It follows that plaintiffs are entitled to injunctive relief to protect their reasonable need for domestic water. If plaintiffs reasonably need the entire flow of Cold Creek for domestic purposes, defendant, who had demonstrated no need other than agricultural, was properly enjoined from all use of the creek.

Defendant, however, points to the declaration of the decree that plaintiffs require the entire flow of Cold Creek for "agricultural and domestic use." ■ She correctly asserts that she is entitled to share in any surplus beyond the reasonable domestic needs of plaintiffs. She asserts a "domestic" need of her own, that is, for watering cattle.

■ In declaring that plaintiffs require the entire flow for agricultural and domestic use, the decree is ambiguous. Considered in terms of plaintiffs' requirements, it permits the implication that plaintiffs do not need the full flow for domestic purposes alone. Considered in terms of actual use, it leaves questions whether, at the point of diversion, Cold Creek supplies plaintiffs with water in excess of actual domestic use and whether this surplus is constant or only occasional. We may look to the entire record to construe this ambiguous judgment. (*Estate of Careaga*, 61 Cal.2d 471, 475-476 [39 Cal.Rptr. 215, 393 P.2d 415].) ■ Plaintiffs' witnesses testified without contradiction that the creek water was used for household purposes and that any diminution in the normal flow caused stagnation, muddiness and unfitness for household use. Even Mrs. Carter testified to the necessity of returning

water to the Cold Creek channel in order to prevent damage to plaintiffs' drinking water. Not all the water was consumed by the Deetz household, and surplus water was used for irrigation and livestock water.

In the apportionment of water among riparian owners, the amount reasonably needed by any one owner is a question of fact to be determined on the circumstances of the particular case. (*Carlsbad etc. Co.* v. *San Luis Rey etc. Co.,* 78 Cal. App.2d 900, 911 [178 P.2d 844].) Quality as well as quantity is a factor in water use. If quality maintenance of natural stream water intended for domestic use calls for a flow in excess of actual consumption, then the priority conferred on domestic needs should not be quantitatively limited to actual consumption. Rather, the priority should extend to that flow necessary to make the domestic use effective, even though an excess over actual domestic consumption may become available for nondomestic purposes. Re-use of the excess for other purposes causes the upstream riparian no injury, since he was not entitled to that part of the flow necessary to assure the lower riparian water of adequate quality for his domestic needs. (See *Wright* v. *Best,* 19 Cal.2d 368, 378 [121 P.2d 702] ; *Joerger* v. *Pacific Gas & Elec. Co.,* 207 Cal. 8, 25-26 [276 P. 1017] ; Hutchins, *California Law of Water Rights,* pp. 184-185; Moskovitz, *Quality Control and Re-use of Water in California,* 45 Cal.L.Rev. 586, 596-597.)

The trial testimony demonstrates that the decree was really intended as a declaration that plaintiffs' domestic needs demanded the full flow of Cold Creek in order to maintain quality of the water; that plaintiffs' use of unconsumed water for agriculture was permissible. So interpreted, the decree is valid. Defendant is not precluded from applying for a modification of the decree should circumstances warrant a belief that the flow available to plaintiff is more than that adequate to make plaintiffs' domestic use effective.

There is no merit in defendant's contention that watering her livestock from the stream is a domestic use. The evidence shows that the livestock on the Carter property is raised for commercial purposes. Domestic use includes the watering of barnyard animals, but not herds raised for profit. (*Cowell* v. *Armstrong,* 210 Cal. 218 [290 P. 1036].)

Defendant also argues that the court erred in allowing plaintiffs to amend their complaint on the day of trial. The original complaint alleged that plaintiffs were entitled to the entire flow of the stream by "prescriptive use." The amend-

ment substituted a claim based upon "appropriative and riparian" rights. A trial court's exercise of discretion in permitting pleading amendments will be sustained on appeal in the absence of a clear abuse of discretion. (2 Witkin, Cal. Procedure, pp. 1605-1606.) At the time the amendment was sought, defense counsel objected, pointing out with considerable validity that plaintiffs' counsel could have sought the amendment much earlier. The trial judge then indicated a willingness to consider a request for continuance should the development of evidence indicate that the defense had been prejudiced. The trial commenced. Mrs. Carter was the only witness called by the defense. After hearing the evidence, the judge observed that there was "at least a substantial chance" that defense counsel had been misled by the tardiness of the amendment. The judge then permitted written briefs and said he would deny any requests for further evidence but without prejudice to reopening the case for more evidence if defense counsel's legal argument showed some reason for it. The defense then submitted a memorandum of law, which made no attempt to point out defenses which would have been available but for the tardy pleading amendment. Defendant did not move to reopen the case for further evidence.

Following the trial court's decision, defendant moved for a new trial, contending that but for the tardiness of the pleading amendment defendant would have produced expert witnesses (a) to testify that defendant's use did not injure or pollute the water and (b) in order to show that the total flow provided ample water for domestic use plus a surplusage which, under riparian doctrines, could be shared by defendant. The new trial motion was denied.

Defense counsel's irritation over the last minute amendment is quite understandable. Conceivably such an amendment could cause a radical switch in trial plans. There was no good reason why plaintiffs' counsel should delay the amendment to the day of trial. The distinction between prescriptive and riparian water rights is simple, fundamental and readily demonstrated by reference to legal texts and handbooks widely used by members of the California Bar. (See, for example, 2 Witkin, Summary of Cal. Law, pp. 1127, 1132-1135, 1142-1145.)

Nevertheless, defendant has failed to demonstrate any real injury. The historical facts regarding Mrs. Carter's own entitlement to water were the same regardless of the legal

character of plaintiffs' claim. The absence of experts to show lack of pollution by defendant was not prejudicial, because the trial court found that defendant had not actually polluted the water. The pollution issue was not crucial in any event. The issue of water quantity *was* crucial, yet defendant sought no continuance for the purpose of presenting testimony additional to that of Mrs. Carter and did not seek to reopen the case for further testimony, except through the medium of a new trial motion after decision. Even on the latter occasion, counsel did not attempt to demonstrate actual evidence of an excess flow, but said only that he wanted to produce expert testimony on the subject. Further, as we have indicated, defendant may apply for a modification of the decree, should new circumstances reveal the presence of an excess flow. For these reasons we have concluded that the order permitting amendment of the complaint did not cause a miscarriage of justice.

Judgment affirmed.

Pierce, P. J., and Van Dyke, J.,* concurred.

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.